UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL A. HINTON, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Case No. 3:20-cv-00633 <br><br> Judge Aleta A. Trauger <br> Magistrate Judge Alistair E. Newbern |

To: The Honorable Aleta A. Trauger, District Judge

**REPORT AND RECOMMENDATION**

This medical malpractice action brought under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) and 2671–2680, arises out of pro se Plaintiff Michael A. Hinton's treatment at the Tennessee Valley Healthcare System (TVHS) campus in Nashville, Tennessee, which is a United States Veterans Administration (VA) facility. (Doc. No. 1.) Hinton, who is diabetic, alleges that TVHS podiatrist Dr. Mark P. Hinkes injured him while trimming a callus on Hinton's foot, that the injury became infected, and that the infection ultimately caused the amputation of Hinton's right leg below the knee. (*Id.*) Defendant the United States of America filed a motion for summary judgment under Federal Rule of Civil Procedure 56 (Doc. No. 36) supported by a memorandum of law (Doc. No. 37), a statement of undisputed material facts (Doc. No. 39), a transcript of Hinton's deposition testimony (Doc. No. 37-1), an expert affidavit and report (Doc. Nos. 38, 38-1), and other exhibits including Hinton's medical records (Doc. Nos. 37-2–37-14). Hinton responded in opposition to the United States' motion (Doc. No. 43), and the United States filed a reply (Doc. No. 44). Hinton also filed a surreply accompanied by excerpts from his medical

records.[1] (Doc. No. 45.) For the reasons that follow, the Magistrate Judge will recommend that the Court grant the United States' motion for summary judgment.

I. **Background**

   A. **Factual Background**[2]

Hinton served in the United States military from 1986 until 1990.[3] (Doc. No. 39.) He was first diagnosed with Type 2 diabetes in 1991 and experienced diabetic neuropathy in both legs.[4] (*Id.*) In 2010, doctors amputated Hinton's left leg below the knee because of a diabetic infection that began in Hinton's left foot. (*Id.*) After losing his left leg, Hinton began seeing Dr. Hinkes every three or four months for podiatry care for his right foot. (*Id.*) From 2011 until 2017, Hinkes treated several calluses and one fissure on Hinton's right foot without incident.[5] (*Id.*) Hinkes also trimmed Hinton's nails and prescribed compression socks and special shoes to relieve pressure on Hinton's foot. (*Id.*)

During an appointment with Hinkes on November 6, 2017, Hinton complained of a callus on his right foot. (*Id.*) Hinkes's treatment notes state that Hinton had developed a "keratosis" on

---

[1]     Hinton did not seek the Court's permission to file a surreply before doing so.

[2]     The facts in this section are drawn from the United States' statement of undisputed material facts (Doc. No. 39) and the parties' summary judgment exhibits (Doc. Nos. 37-1–37-14, 38, 38-1, 45).

[3]     The parties do not specify in what branch of the military Hinton served. In his deposition, Hinton states that he "started out in the Reserves" in 1986 at age 18 and was in active duty for three years before entering college. (Doc. No. 37-1, PageID# 210–11.)

[4]     "Diabetic neuropathy is a common condition that reduces tactile and pain sensation in the legs and feet allowing frequent foot injuries due to pressure." 2 Dan J. Tennenhouse, *Attorneys Medical Deskbook* § 24:27 (4th ed. updated Oct. 2022).

[5]     A fissure is "[a] linear cleavage or crack in the skin[.]" 9 Monique Leahy *Attorneys Medical Advisor* § 114:3 (Mar. 2023).

his fifth right toe with a six-centimeter-long fissure.[6] (Doc. No. 37-11, PageID# 435.) The treatment notes state that Hinkes "[t]rimmed the nails and keratosis" and prescribed "Lac Hydrin Lotion[.]" (*Id.*) The notes do not mention a wound on Hinton's foot or any bleeding. (Doc. Nos. 37-11, 39.)

Hinton states that his callus was not open or bleeding before the appointment on November 6, 2017, but that, "when [Hinkes] used a scalpel . . . to cut the . . . dead part off, he went too deep, and it caused it to become a wound" that bled. (Doc. No. 37-1, PageID# 297.) Hinton further states that Hinkes told him "to keep an eye on it to make sure it [did not] get any worse." (*Id.* at PageID# 298.) According to Hinton, Hinkes typically used a file on Hinton's calluses, but had used a scalpel to trim a callus with a fissure without any complications on one prior occasion. (Doc. No. 37-1.)

Hinton returned to TVHS on November 21, 2017, for a previously scheduled appointment at the Endocrinology and Metabolism Clinic and an emergency appointment with Hinkes. (Doc. Nos. 37-1, 37-12, 37-13, 39.) Hinton states that the area where Hinkes had trimmed Hinton's callus had "started getting redder, and it started having a little puss and stuff start coming out of it" and that Hinton knew "it was getting infected." (Doc. No. 37-1, PageID# 304.) Hinkes's treatment notes from November 21, 2017, state that Hinton "return[ed] on an emergency basis with [complaints of] a wound plantar to the 5th met[atarsal] right. Onset is 5 days and he has been applying triple antibiotic and a band aid to the site."[7] (Doc. No. 37-12, PageID# 437.) The notes

---

[6] "'Keratosis' is a general term which can refer to any condition of the skin that results in an outgrowth made up of keratin, a tough protein ordinarily found in the hair and nails." 7 Monique Leahy, *Attorneys Medical Advisor* § 59:1 (Mar. 2023).

[7] Metatarsals are "[b]ones of the foot." 1 Dan J. Tennenhouse, *Attorneys Medical Deskbook* § 5:15 (4th ed. updated Oct. 2022). "Plantar" means "[a] direction in the foot towards the bottom of the foot." *Id.* § 11:5.

state that Hinkes debrided the wound and sent a tissue sample to the lab for a culture and sensitivity study.[8] (Doc. No. 37-12.) Hinkes also ordered an x-ray; prescribed Hinton antibiotics and a topical cream; provided Hinton with wound dressings and a surgical shoe; and referred Hinton to the TVHS wound clinic. (*Id.*)

Hinton had two appointments at the wound clinic in December 2017 but the infection worsened, and Hinton was hospitalized in January 2018. (Doc. Nos. 37-1, 39.) Dr. Richard Sieber amputated Hinton's fifth right toe and later amputated Hinton's remaining toes. When the infection remained after these amputations, Hinton agreed to have vascular surgeons amputate his right leg below the knee. (Doc. Nos. 37-1, 39.)

### B. Procedural History

Hinton filed an administrative tort claim with the VA regarding Hinkes's treatment and, after receiving a letter denying the claim, initiated this action by filing a complaint under the FTCA. (Doc. No. 1.) Hinton's complaint alleges that Hinkes's medical negligence caused him to lose his right leg and seeks $1.5 million in damages. (*Id.*) The Court referred this action to the Magistrate Judge to dispose or recommend disposition of any pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 3.)

The United States moved to dismiss Hinton's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted, arguing that Hinton did not comply with the Tennessee Health Care Liability Act's (THCLA) requirement that a plaintiff alleging health care liability claims file a certificate of good faith with his or her

---

[8] Debridement is the "removal of foreign, dead or contaminated matter [ ] from and surrounding the [wound], so as to expose healthy tissue and promote healing." 9 Monique Leahy, *Attorneys Medical Advisor* § 114:15 (Mar. 2023). Culture and sensitivity studies are used to determine which antibiotic drugs are most effective against a particular micro-organism. 1 Dan J. Tennenhouse, *Attorneys Medical Deskbook* § 2:24 (4th ed. updated Oct. 2022).

complaint, Tenn. Code Ann. § 29-26-122. (Doc. No. 9.) The Court denied the United States' motion, finding that the THCLA's certificate-of-good-faith requirement conflicts with the Federal Rules of Civil Procedure and therefore does not apply to actions in federal court. (Doc. Nos. 24, 28.)

The United States has now filed a motion for summary judgment (Doc. No. 36) accompanied by a supporting memorandum of law (Doc. No. 37), a statement of undisputed material facts (Doc. No. 39), the transcript of Hinton's deposition testimony (Doc. No. 37-1), an affidavit and report by Nashville Podiatrist Dr. Jamil Auvy Hossain (Doc. Nos. 38, 38-1), and several other exhibits including excerpts from Hinton's medical records (Doc. Nos. 37-2–37-14). Hinton filed a response in opposition to the United States' motion. (Doc. No. 43.) He did not respond to the United States' statement of undisputed material facts or provide any exhibits to support his response. The United States filed a reply in support of its motion. (Doc. No. 44.) Hinton filed a surreply and attached medical records related to his claims. (Doc. No. 45.)

## II.     Legal Standard

In resolving a motion for summary judgment, the Court must undertake "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

5

The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 282 (6th Cir. 2012) ("Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))). The parties "must support" their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or, alternatively, by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). Courts must view the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). However, if the moving party carries its initial burden, the non-moving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his or her position. *Anderson*, 477 U.S. at 252. In order to proceed to trial, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Id.*

This Court's Local Rule 56.01 provides that "any motion for summary judgment . . . must be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." M.D. Tenn. R. 56.01(b) (statement of undisputed material facts). Under this rule, "[e]ach fact must be set forth in a separate, numbered paragraph

[and] . . . must be supported by specific citation to the record." *Id.* Any party opposing a motion for summary judgment must specifically respond to each asserted fact by: "(1) Agreeing that the fact is undisputed; (2) Agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) Demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record." M.D. Tenn. R. 56.01(c) (response to statement of facts). "The response must be made on the document provided by the movant or on another document in which the non-movant has reproduced the facts and citations verbatim as set forth by the movant" and "must be filed with the papers in opposition to the motion for summary judgment." *Id.*

Pro se parties are not excused from complying with these rules. *See* M.D. Tenn. R. 56.01(b)–(c). Indeed, the Court's scheduling order in this action instructed the parties to "refer to Federal Rule of Civil Procedure 56 and Local Rule 56.01 for summary judgment procedures[,]" described Local Rule 56.01's requirements, and warned the parties that "[f]ailure to respond in opposition to a statement of material fact may result in the Court assuming that the fact is true for purposes of summary judgment." (Doc. No. 29, PageID# 155); *see also* M.D. Tenn. R. 56.01(f) (failure to respond) ("If a timely response to a moving party's statement of material facts . . . is not filed within the time periods provided by these rules, the asserted facts shall be deemed undisputed for purposes of summary judgment.").

**III.     Analysis**

The FTCA allows "parties injured by federal employees acting within the scope of their employment" "to bring certain state-law tort suits against the Federal Government." *Brownback v. King*, 141 S. Ct. 740, 745 (2021). The "FTCA does not *create* liability, it merely waives sovereign immunity to the extent that state-law would impose liability on a 'private individual in similar circumstances.'" *Myers v. United States*, 17 F.3d 890, 899 (6th Cir. 1994) (quoting 28 U.S.C.

§ 2674). Federal courts considering the merits of FTCA claims therefore look to "'the law of the place where the'" federal employee's allegedly negligent or wrongful "'act or omission occurred.'" *Mynatt v. United States*, 45 F.4th 889, 895 (6th Cir. 2022) (quoting 28 U.S.C. § 1346(b)(1)); *see also Young v. United States*, 71 F.3d 1238, 1242 (6th Cir. 1995) ("As a general rule, domestic liability on the part of the federal government under the Federal Tort Claims Act is determined in accordance with the law of the state where the event giving rise to liability occurred."). Tennessee law determines Hinkes's liability under the FTCA for his treatment of Hinton.

The THCLA governs all health care liability actions—defined as "any civil action . . . alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based"—brought under Tennessee law. Tenn. Code Ann. § 29-26-101(a)(1). There is no dispute that Hinton's malpractice claim falls within the THCLA's broad scope. *See Osunde v. Delta Med. Ctr.*, 505 S.W.3d 875, 884–85 (Tenn. Ct. App. 2016) ("Given the breadth of the statute, it should not be surprising if most claims now arising within a medical setting constitute health care liability actions." (footnote omitted)).

> To prevail on a THCLA claim, a plaintiff must prove three elements:
>
> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;
>
> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
>
> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

Tenn. Code Ann. § 29-26-115(a). The Tennessee Supreme Court has held that, "[g]enerally, . . . [these elements] must be proven through the testimony of a qualified expert witness." *Young v.*

8

*Frist Cardiology, PLLC*, 599 S.W.3d 568, 571 (Tenn. 2020); *see also Est. of Barnwell v. Grigsby*, 801 F. App'x 354, 366 (6th Cir. 2020) ("[T]he plaintiff 'in most medical negligence cases must provide expert testimony to establish the required elements' of a THCLA claim." (quoting *Shipley v. Williams*, 350 S.W.3d 527, 550 (Tenn. 2011)). "This is because 'most medical claims involve complicated and technical information which is beyond the general knowledge of a lay jury.'" *Est. of Barnwell*, 801 F. App'x at 366 (quoting *Seavers v. Methodist Med. Ctr. of Oak Ridge*, 9 S.W.3d 86, 92 (Tenn. 1999)). There are, however, exceptions to the general rule, and courts have found that not every claim brought under the THCLA requires expert proof. *See, e.g.*, *Mullin v. Rolling Hills Hosp.*, No. 3:16-cv-02609, 2017 WL 6523482, at *6–7 (M.D. Tenn. Apr. 17, 2017) (discussing "common knowledge exception" to THCLA's expert proof requirement and finding expert proof was not required to establish plaintiffs' claims for abuse of process, false imprisonment, intentional and negligent infliction of emotional distress, conversion, assault, and breach of duty of care), *report and recommendation adopted*, 2017 WL 2953357 (M.D. Tenn. July 11, 2017).

The United States argues that it is entitled to summary judgment because Hinton has not disclosed any expert proof that he will employ to prove his claim at trial. (Doc. No. 37.) This argument assumes that the THCLA necessarily requires expert proof in all cases—which this Court has found it does not, *see Mullin*, 2017 WL 6523482, at *6–7—and that whether Hinton's claims require the kind of "'complicated and technical information'" that might require expert proof can be determined as a matter of law at summary judgment, *Est. of Barnwell*, 801 F. App'x at 366 (quoting *Seavers*, 9 S.W.3d at 92). The Court need not address these issues, however, because the United States has shown that it is entitled to summary judgment on Hinton's claim even if the expert proof requirement does not apply.

To prevail at trial, Hinton must establish the applicable standard of care, that Hinkes violated that standard in treating Hinton, and that Hinton suffered injury as a proximate result of Hinkes's violation. Tenn. Code Ann. § 29-26-115(a). To prevail at summary judgment, the United States must show that there is no genuine issue of material fact as to these elements by citing particular materials in the record, including depositions, affidavits or declarations, discovery responses, and other forms of proof. *See* Fed. R. Civ. P. 56(c). Hinton may defeat the United States' motion by citing the same types of evidence to show material factual disputes. *Id.*

With respect to the first element of Hinton's claim, the United States offers an expert witness report prepared by Jamil Auvy Hossain, D.P.M., a podiatrist practicing in Nashville.[9] (Doc. No. 38-1.) Hossain's report states that "[t]he proper standard of care for" treating calluses and fissures on a diabetic's foot is: "(1) Treatment with topical agents, (2) Sharp debridement[,] and (3) Proper [o]ffloading." (*Id.* at PageID# 454.) Hinton has not presented any contrary evidence—expert or otherwise—to create a question of fact as to the applicable standard of care. The standard of care articulated in Hossain's report is therefore the undisputed standard of care applicable to Hinton's claim for purposes of summary judgment.

To establish that Hinkes's treatment of Hinton did not fall below that standard of care, the United States offers statements from Hossain's expert report that Hinkes treated Hinton "for fissures or keratosis" under his fifth metatarsal on November 6, 2017, "by prescribing Lac-Hydrin, debriding any callous or fissures with a scalpel[,] and offloading Mr. Hinton with the use of a

---

[9] Hossain states by affidavit that he is "a practicing Podiatrist in Nashville, Tennessee" who has "been in practice since 2015" and is "aware of and practice[s] the standard of care in the diagnosis and treatment of lower extremity wound care, diabetic limb salvage and osteomyelitis in regards to the foot and ankle." (Doc. No. 38, PageID# 445, ¶ 1.) He "completed post graduate training in Podiatric Medicine and Surgery including foot and rear foot reconstructive surgery" and is "board certified by the American Board of Foot and Ankle Surgery." (*Id.*)

diabetic shoe[ ] during his care." (*Id.*) Hossain states that he reviewed medical records for a routine visit Hinton attended with his primary care nurse on November 7, 2016—the day after Hinkes trimmed Hinton's callus—and that the nurse's treatment notes contain "no mention of injury to [Hinton's] right foot, or mention of any open wounds, lesions, fissures or ulceration." (*Id.* at PageID# 451.) This evidence is sufficient to carry the United States' initial burden to show the absence of a dispute of material fact that Hinkes complied with the applicable standard of care. The burden thus shifts to Hinton to identify specific facts showing a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 323, 324; *Blizzard*, 698 F.3d at 282.

Hinton testified in his deposition that Hinkes's use of a scalpel instead of a file to debride his callous on November 6, 2017, fell below the standard of care because Hinkes cut too deep and caused the wound that ultimately became infected. (Doc. No. 37-1.) Hinton testified that Hinkes "knew [his] medical conditions" and thus "knew . . . to be cautious and all of that when it comes to [his] care." (*Id.* at PageID# 339) Hinton points to his VA medical records from a November 21, 2017 visit to the Endocrinology and Metabolism Clinic, which state that Hinton: "reports he saw [D]r. Hinkes a few weeks ago and had callus shaved off foot. Reports site now sore and has been bleeding—To see [Hinkes] later today." (Doc. No. 45, PageID# 502.) Notes from a follow-up visit with Hinkes on the same day state that Hinton returned "on an emergency basis" with a wound and note that "[o]nset is 5 days and he has been applying triple antibiotic and band aid to the site." (*Id.* at PageID# 503; Doc. No. 37-12, PageID# 437.) Hinkes's notes state that he debrided the wound, sent out a tissue sample for testing, prescribed oral and topical antibiotics, provided dressings and a surgical shoe, ordered an x-ray of Hinton's foot, and referred Hinton to the wound clinic. (Doc. Nos. 37-12, 45.)

These records do not create a genuine issue of material fact that Hinkes's use of a scalpel to debride Hinton's callous on November 6, 2017, violated the applicable standard of care. The standard calls for sharp debridement, and Hinton has not pointed to any record evidence to support his assertion that Hinkes's use of a scalpel to debride his callous violated that standard. Rather, Hinton testified that, on one other occasion, Hinkes used a scalpel to trim a fissured callus on Hinton's foot without any complications. (Doc. Nos. 37-1, 39.) Nor has Hinton pointed to any record evidence to support his assertion that Hinkes "went too deep" with the scalpel. (Doc. No. 37-1, PageID# 339.) Instead, the medical records Hinton cites document the wound appearing after the November 6, 2017 treatment. Considering the other record evidence, Hinton's conclusory testimony that the wound was caused by Hinkes's use of a scalpel on November 6, without more, is insufficient to create a genuine dispute of material fact that Hinkes violated the applicable standard of care. *See Anderson*, 477 U.S. at 252. The United States has met its burden at summary judgment to show no genuine issue of material fact as to the first two elements of Hinton's claim. The Court need not reach the third element.

## IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that the United States' motion for summary judgment (Doc. No. 36) be GRANTED and that the Court enter judgment in the United States' favor.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 5th day of June, 2023.

ALISTAIR E. NEWBERN
United States Magistrate Judge