# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| MICHAEL A. HINTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 3:20-cv-00633** |
| | ) | **Judge Aleta A. Trauger** |
| UNITED STATES OF AMERICA, | ) | **Magistrate Judge Alistair E. Newbern** |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Before the court is plaintiff Michael Hinton's "Memorandum of Points and Authorities to Motion of Summary Judgement Pursuant to Fed. R. Civ. P. 56" (Doc. No. 48), which the court construes as the plaintiff's objections to the Magistrate Judge's Amended Report and Recommendation ("Amended R&R") (Doc. No. 47),[1] which recommends that the defendant's Motion for Summary Judgment (Doc. No. 36) be granted. The defendant has not responded to the objections.

For the reasons set forth herein, the court will accept the recommendation that the defendant's Motion for Summary Judgment be granted, but on different grounds than those reached by the Magistrate Judge.

## I.    LEGAL STANDARDS

### A.    Objections to Magistrate Judge's Report and Recommendation

Within fourteen days after being served with a report and recommendation as to a

---

[1] The Amended R&R supersedes and replaces the original Report and Recommendation (Doc. No. 46).

dispositive matter, any party "may serve and file specific written objections to [a magistrate judge's] proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). The district court must review *de novo* any portion of the report and recommendation "that has been properly objected to." Fed. R. Civ. P. 72(b)(3). In conducting its review, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*

The district court is not required to review—under a *de novo* or any other standard—those aspects of the report and recommendation to which no objection is made. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, arguments made in an objection to a magistrate judge's report and recommendation that were not first presented to the magistrate judge for consideration are generally deemed waived. *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) (citations omitted).

### B.      Rule 56 Standard

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine.'" *Id.*

"[A] fact is 'material' within the meaning of Rule 56(a) if the dispute over it might affect the outcome of the lawsuit under the governing law." *O'Donnell v. City of Cleveland*, 838 F.3d 718, 725 (6th Cir. 2016) (citing *Anderson*, 477 U.S. at 248). A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Peeples v. City of Detroit*, 891 F.3d 622, 630 (6th Cir. 2018).

The party bringing the summary judgment motion has the initial burden of identifying and citing specific portions of the record—including, *inter alia*, depositions, documents, affidavits, or declarations—that it believes demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627–28 (6th Cir. 2018); Fed. R. Civ. P. 56(c)(1)(A). If the non-moving party asserts that a fact is genuinely disputed, it generally "must support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Pittman*, 901 F.3d at 628 ("The nonmoving party 'must set forth specific facts showing that there is a genuine issue for trial.'" (quoting *Anderson*, 477 U.S. at 250)). The court must view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and the weighing of evidence are improper. *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018).

## II.  PROCEDURAL BACKGROUND

Plaintiff Michael Hinton brings suit under the Federal Tort Claims Act (FTCA) alleging medical malpractice by a physician from whom he received treatment at the Tennessee Valley Healthcare System ("TVHS") campus, a Veterans Administration (VA) facility in Nashville, Tennessee. After Hinton's administrative tort claim filed with the VA was denied, Hinton filed suit *pro se* in this court, and the case was referred to the Magistrate Judge to oversee service of process, to enter a scheduling order for the management of the case, and to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B). (Doc.

No. 3.)

Hinton, who is diabetic, alleges that TVHS podiatrist Dr. Mark P. Hinkes negligently injured him while trimming a callus on Hinton's foot, that the injury became infected, and that the infection ultimately caused the amputation of Hinton's right leg below the knee. (Doc. No. 1.) Defendant the United States of America ("the government") filed a Motion for Summary Judgment under Federal Rule of Civil Procedure 56 (Doc. No. 36) supported by a memorandum of law (Doc. No. 37), a statement of undisputed material facts (Doc. No. 39), a transcript of Hinton's deposition testimony (Doc. No. 37-1), an expert affidavit and report (Doc. Nos. 38, 38-1), and other exhibits including Hinton's medical records (Doc. Nos. 37-2–37-14). Hinton responded in opposition to the United States' motion (Doc. No. 43), and the United States filed a reply (Doc. No. 44). Hinton, without leave of court, also filed a surreply accompanied by excerpts from his medical records. (Doc. No. 45.) The government's motion is primarily premised upon its argument that the plaintiff cannot prove his claims without expert proof, which he has not obtained.

The Magistrate Judge reviewed the summary judgment filings and issued the Amended R&R, in which she concludes that (1) the Tennessee Healthcare Liability Act ("THCLA"), which governs the plaintiff's malpractice claim, does not necessarily require expert proof in all cases; (2) there was no need to consider whether Hinton's claim in this case requires the kind of "complicated and technical information" that might require expert proof (Doc. No. 47, at 10), because (3) even if Hinton is *not* required to present expert proof, the government has established that it is entitled to summary judgment. More specifically, the Magistrate Judge held that Hinton, to prevail at trial, has the burden of proving the applicable standard of care, that Dr. Hinkes violated the standard of care, and that Hinton suffered injury as a proximate result of that

violation. (*Id.*) To prevail on summary judgment, the government must show that there is no genuine issue of material fact as to these elements. The Magistrate Judge found that the government carried its burden of proof at summary judgment by presenting an expert report prepared by Jamil Auvy Hossain, D.P.M., a podiatrist practicing in Nashville.

Hossain's Report sets forth the standard of care for treating calluses and fissures on a diabetic foot. According to Hossain, "[t]he proper standard of care" for treating calluses and fissures on a diabetic's foot is: "(1) Treatment with topical agents, (2) Sharp debridement and (3) Proper [o]ffloading." (Doc. No. 38-1, at 7.) Hinton, on the other hand, has not presented any contrary evidence, so the Magistrate Judge found the standard of care articulated in Hossain's report to be "the undisputed standard of care applicable to Hinton's claim for purposes of summary judgment." (Doc. No. 46, at 10.)

Second, Hossain states that Hinkes' treatment of Hinton complied with the standard of care, because the medical records show that Hinkes treated Hinton for "fissures or keratosis" under his fifth metatarsal on November 6, 2017, "by prescribing Lac-Hydrin, debriding any call[]us or fissures with a scalpel[,] and offloading Mr. Hinton with the use of a diabetic shoe[] during his care." (Doc. No. 38-1, at 7.)[2] Hossain also apparently concludes as a factual matter that Hinkes did not cause a wound, based on his review of Hinkes' treatment notes, which contain no mention of "any incidents such as laceration or injury to integument." (*Id.*) In addition, Hossain points out that Hinton's medical records indicate that Hinton saw his primary care nurse for a routine visit on November 7, 2017, just one day later, and the nurse's treatment notes contain "no mention of injury to [Hinton's] right foot, or mention of any open wounds,

---

[2] The treatment note for November 6, 2017 includes diagnoses of "DM sensory neuropathy Onychomycosis, fissure (keratosis)" and indicates that Hinkes "trimmed the nails and keratosis" and prescribed "LacHydrin Lotion." (Doc. No. 45, at 7.)

lesions, fissures or ulceration." (*Id.* at 4.)[3] The Magistrate Judge found this evidence sufficient to establish the government's burden of showing the absence of any material factual dispute as to whether Hinkes complied with the standard of care, thus shifting the burden to the plaintiff to identify specific factual disputes requiring a trial. (Doc. No. 46, at 11.)

Hinton contends, and testified in his deposition, that Hinkes' use of a scalpel instead of a file to trim his callus on November 6, 2017 fell below the standard of care, because Hinkes "went too deep and caused the wound" that ultimately became infected and led to the amputation. (Doc. No. 37-1, at 147, Hinton Dep. 146.) More specifically, Hinton testified unequivocally that, when he went to see Dr. Hinke on November 6, 2017, he had a "regular, hard" callus on the side of his foot near his fifth toe, and, when Dr. Hinkes used a scalpel to trim it, to "cut the dead part off," "he went to deep, and it caused it to become a wound." (Doc. No. 37-1, at 105.) This wound "started bleeding then," before he left the doctor's office, and the doctor "told [him] to keep an eye on it to make sure it doesn't get any worse." (*Id.* at 106.) Hinton affirmatively stated in his deposition that the medical treatment notes are not consistent with what actually happened. (*Id.* at 107.)

Hinton also points to his VA medical records from November 21, 2017, stating that Hinton reported at that time that he had a callus shaved off "a few weeks ago" but that the "site [was] now sore and has been bleeding," and he was to see Hinkes later the same day. (Doc. No. 45, at 10.) Hinkes' treatment note from that day states that the patient was complaining of a "wound plantar to the 5th met[atarsal] right. Onset is 5 days and he has been applying triple antibiotic and a bandaid to the site." (*Id.* at 11.) The diagnosis was "diabetic foot ulcer"

---

[3] The treatment note for November 7, 2017 does note: "Saw podiatry yesterday for foot issues/callous." (Doc. No. 45, at 8.)

accompanying diabetic sensory neuropathy. (*Id.*) At that time, Hinkes debrided the wound, sent out a tissue sample for testing, prescribed oral and topical antibiotics, provided dressings and a surgical shoe, ordered an x-ray, and referred him to the wound clinic. (*Id.* at 11–12.) The treatment notes from an appointment on November 29, 2017 with a wound care specialist state that the plaintiff "returns to wound clinic with new right foot plantar pressure ulcer at 5th metatarsal head. Patient is well known to wound service for foot wounds which had previously healed. Recently saw podiatry for this new ulcer and was referred back to wound service." (*Id.* at 12–13.) Another treatment note from ER Nursing Assessment on December 18, 2017 states that the plaintiff "presents initially for R. foot pain with wound to foot where podiatry shaved a callus." (Doc. No. 45, at 16.)

The Magistrate Judge found that Hinton's testimony that Hinkes "went too deep" when he used the scalpel to trim the callus on November 6, in conjunction with the medical records, was not sufficient to give rise to a material factual dispute as to whether Hinkes violated the standard of care, because both the Magistrate Judge and Hossain concluded that the medical records establish that the wound that eventually became infected and led to the amputation of Hinton's right leg occurred sometime after his November 6 visit to Hinkes. (*See, e.g.*, Doc. No. 46, at 12 ("Hinton's conclusory testimony that the wound was caused by Hinkes's use of a scalpel on November 6, without more, is insufficient to create a genuine dispute of material fact that Hinkes violated the applicable standard of care."); Doc. No. 38-1, at 6 ("[T]he keratosis was debrided with no mention of any incidents such as laceration or injury to integument. Patient then was seen and evaluated by Orthotics Lab on the same day where no mention of any injury to the integument was reported. Patient was then seen the next day by his primary care provider Kelly S. Tate MD, on November 7th with no mention of any wound or laceration to the right

foot.").)

Based on that conclusion, the Magistrate Judge recommends that the government's Motion for Summary Judgment be granted. (*Id.* at 13.) Hinton objects on the basis that (1) Hinkes breached the standard of care by using a scalpel on November 6, 2017 without Hinton's written consent, in violation of TVHS policy and procedures; (2) Dr. Hinkes' treatment note from November 21, 2017 stating "Onset is 5 days" does not specify whether the wound or the infection started five days ago; (3) there is a material factual dispute as to whether Hinkes caused a wound on November 6, 2017, based on the plaintiff's word against Hinkes' word; and (4) if there were no wound, there would be no infection. (Doc. No. 48, at 4–5.)

## III.    DISCUSSION

Regarding Hinton's specific objections, several are clearly without merit. First, whether Hinkes violated TVHS policy and procedures by not obtaining Hinton's consent prior to using a scalpel to trim the callus on November 6, 2017 has no bearing on whether Hinkes violated the standard of care for providing the medical treatment to the plaintiff on that day. Moreover, the plaintiff did not raise this argument in responding to the Motion for Summary Judgment, so the objection on this basis is not properly before the court. Second, even if the court assumes that Hinkes' treatment note from November 21, 2017, stating "Onset is 5 days," means that the *infection* started five days previously rather than that the wound appeared five days previously, that would not necessarily give rise to a material factual dispute as to whether Hinkes breached the applicable standard of care. And third, Hinton's assertion that there could be no infection without a wound does not establish that Hinkes caused the wound.

However, neither the R&R nor Dr. Hossain's expert opinion addresses Hinton's unequivocal testimony that Dr. Hinkes caused a bleeding wound on November 6, 2017 when he used a scalpel to shave the callus on Hinton's foot. As indicated above, Hossain's opinion that

Hinkes did not violate the standard of care appears to be entirely premised upon his assumption that Hinkes did not cause a "laceration or injury to the integument" on November 6, 2017. He does not offer an opinion as to whether Hinkes' treatment would still comply with the standard of care if he *did* cause a bleeding wound on that day when he used a scalpel to trim the callus on Hinton's foot. If the court presumes the truth of the facts as presented by the plaintiff—that Dr. Hinkes' use of a scalpel on the callus caused a bleeding wound—then the government's evidence is *not* sufficient, standing alone, to establish its entitlement to summary judgment. As noted above, however, the original basis for the government's Motion for Summary Judgment is that the plaintiff's claim must be dismissed because he cannot prove the required elements of a medical malpractice claim without expert proof. The Magistrate Judge did not squarely address this argument, but the court finds that it is dispositive of this case.

To prevail on a medical negligence claim under the THCLA, a *plaintiff* must prove (1) the applicable standard of care in the relevant community at the time the alleged injury occurred; (2) that the defendant failed to act in accordance with that standard; and (3) that the plaintiff's injuries were proximately caused by the defendant's negligent act or omission. *See* Tenn. Code Ann. § 29-26-115(a). "[I]njury alone does not raise a presumption of the defendant's negligence." *Id.* § 29-26-115(d).

Generally, "expert testimony must be provided by a plaintiff to establish the elements of his or her medical negligence case," unless the case falls within the "common knowledge" exception. *Shipley v. Williams*, 350 S.W.3d 527, 537 (Tenn. 2011); *see also Young v. Frist Cardiology, PLLC*, 599 S.W.3d 568, 571 (Tenn. 2020); *Elliothorpe v. Weismark*, 479 S.W.3d 818, 829 (Tenn. 2015). Tennessee courts have recognized that

> [m]edical malpractice cases fitting into the "common knowledge" exception typically involve unusual injuries such as a sponge or needle being left in the

patient's abdomen following surgery or where the patient's eye is cut during the performance of an appendectomy. Jurors in those cases are permitted to infer negligence based upon a common-sense understanding that such injuries do not ordinarily occur unless the attending physician or health-care provider was somehow negligent.

*Seavers v. Methodist Med. Ctr. of Oak Ridge*, 9 S.W.3d 86, 92 (Tenn. 1999) (citations omitted).

In this case, to the contrary, the elements of the plaintiff's case—the standard of care, breach thereof, and proximate causation—do not fall within the common knowledge exception. Even assuming as a factual matter that Dr. Hinkes did, indeed, go "too deep" with the scalpel and cause a small wound on November 6, 2017, the court cannot presume that that injury to the plaintiff was the result of negligence, Tenn. Code Ann. § 29-26-115(d)—even if the only injury at issue here were the small bleeding wound the plaintiff claims that he received on that day. The plaintiff's claim is not based on the small wound itself. Rather, he contends that this small wound was the proximate cause of toe amputations months later, on January 4, 2018 and March 8, 2018, and the amputation of his right leg below the knee more than six months later, on June 22, 2018. The records indicate that Hinton received a lot of medical treatment from many different medical practitioners during those months.[4] Moreover, the record further reveals that the plaintiff has a very complicated medical history of uncontrolled diabetes, a prior amputation of his left leg below the knee from a similar infected foot wound, and a documented habit of failing to comply with medical recommendations. He also failed to obtain treatment for what he recognized as an infection for at least five days. In light of all of these factors, to establish that a small wound on November 6 was the proximate cause of his subsequent amputations, Hinton needs expert proof. No jury could reasonably infer, based on "common knowledge" and the evidence now in the

---

[4] He does not allege negligence by any other practitioners or by Hinkes in connection with any treatment before or after the callus trim on November 6, 2017.

record, that Hinkes' purported negligence in creating a wound when he used a scalpel to trim a callus proximately caused the infection that caused the amputations. Hinton admittedly does not have expert proof.

The defendant, having pointed out that the plaintiff lacks sufficient evidence to establish the elements of his claim, has satisfied Rule 56 and is entitled to summary judgment.

## IV. CONCLUSION

For the reasons set forth herein, the plaintiff's construed objections will be overruled, and the defendant's Motion for Summary Judgment will be granted. An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge